IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LAMAR A. WILLIAMS, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. DKC-21-537 |
| UNITED STATES OF AMERIKKKA, | * | |
| JUDICIAL COUNCIL FOR THE FOURTH<br>  CIRCUIT, | * | |
| U.S. COURT OF APPEALS FOR THE<br>  FOURTH CIRCUIT, | * | |
| U.S. MARSHAL'S SERVICE OF MD; DEPT<br>  OF INJUSTICE,[1] | * | |
| DISTRICT OF MARYLAND; DEPT. OF<br>  INJUSTICE | * | |
| PROBATION AND PRETRIAL SERVICES<br>  OFFICE, | * | |
| FEDERAL PUBLIC DEFENDER FOR THE<br>  DISTRICT OF MARYLAND, | * | |
| MAGISTRATE JUDGE SELECTION PANEL, | | |
| U.S. SUPREME COURT, and | * | |
| BALTIMORE COUNTY POLICE<br>  DEPARTMENT | * | |
| Defendants | * | |
| | *** | |

**MEMORANDUM OPINION**

Lamar Williams, a Maryland resident, has filed the instant complaint,[2] as amended, seeking money damages for injuries sustained as a result of his July 3, 2018 arrest and subsequent conviction for criminal contempt of court in violation of 18 U.S.C. § 401.[3]  Accompanying the

---

[1]   The Clerk shall amend the docket to reflect the correct spelling of Marshal.

[2]   The initial complaint is accompanied by 311 pages of exhibits, most of which are copies of documents filed in his previous cases, including emails to chambers; documents regarding his claimed economic damages incurred as a result of his prior cases; documents regarding the Chief Judge James Bredar's confirmation proceedings; his objection to the reappointment of then Magistrate Judges Gallagher and Coulson; and emails between Mr. Williams and his Federal Public Defender.  ECF Nos. 1-5; 1-6; 1-7; 1-8; 1-9.

[3]   *See United States v. Williams*, TDC-18-413 (D. Md.).

complaint is Mr. Williams' motion for leave to proceed *in forma pauperis* (ECF No. 2), which shall be granted.

This case arises from and is related to the cases of *Williams v. Baltimore County*, Civil Action No. GLR-17-66 and *United States v. Williams*, Criminal No. TDC-18-413.  The civil action seeking damages under the Americans with Disabilities Act[4] arose after Mr. Williams was terminated from employment with Baltimore County.  During those proceedings Mr. Williams was ordered not to contact the chambers of the presiding judge, the Honorable James Bredar, via email or telephone and to communicate only in writing via documents filed with the Clerk. Dissatisfied with the conduct of those proceedings, Mr. Williams filed complaints against Judge Bredar with the Judicial Council of the United States Court of Appeals for the Fourth Circuit.

Mr. Williams subsequently violated the court order barring him from contacting chambers and the matter was referred to the United States Marshal for investigation.  Ultimately, Mr. Williams was charged with one count of criminal contempt in violation of 18 U.S.C. § 401 and, after a bench trial, was convicted and sentenced to 47 days' confinement.  Mr. Williams' conviction was affirmed by the United States Court of Appeals for the Fourth Circuit and his petition for writ of certiorari was denied by the United States Supreme Court.  *See United States v. Williams*, Criminal No. TDC-18-413 (D. Md.), ECF Nos. 147 and 151, respectively.

Aggrieved by the actions of the court, Mr. Williams filed Civil Action No. RDB-19-550 which raised claims substantially similar to those advanced in this amended complaint and which was not permitted to proceed.  Here, without naming individual Defendants, Mr. Williams complains of all aspects of the handling of each case in this court.  For reasons that follow, this case may not proceed.

---

[4]    The Americans with Disabilities Act ("ADA") is found at 42 U.S.C. § 12111, *et seq.*

**Background**

Mr. Williams brings his action against the following parties: "united states of amerikkka", Judicial Council for Fourth Circuit, involved in reviewing Mr. Williams' claims filed against Judge Bredar, U.S. Court of Appeals for the Fourth Circuit for dismissing his appeals in his civil and criminal cases; U.S. Marshal's Service of MD; Dept of Injustice, involved in arresting and detaining Mr. Williams for his charge of criminal contempt; U.S. District of Maryland, responsible for ruling on his civil and criminal cases; Probation and Pretrial Services Office, involved in his criminal contempt case; Federal Public Defender for the District of Maryland, responsible for representing him in his criminal contempt proceedings; Magistrate Judge Selection Panel, seemingly responsible because Magistrate Judges of this court held hearings during Mr. Williams' contempt proceedings; U.S. Supreme Court, responsible for denying Mr. Williams' petitions for writ of certiorari; and Baltimore County Police Department, involved in his arrest on the criminal contempt charge.

The precise nature of Mr. Williams' amended complaint is unclear. He invokes this court's federal question jurisdiction under 28 U.S.C. § 1331 and claims, without support, that the handling of his numerous cases by this court and others violated: 42 U.S.C. § 1983 (civil action for deprivation of rights), The Civil Rights Act of 1871 (also known as the Second Ku Klux Klan Act), 42 U.S.C. § 1985 (conspiracy to interfere with civil rights); 42 U.S.C. § 12203 (prohibition against retaliation and coercion); as well as his rights under the 1st, 2nd, 4th, 6th, 7th, 8th, 9th, 14th, and 15th Amendments to the United States Constitution. ECF No. 1-1, p. 2. Mr. Williams, however, fails to explain how Defendants' conduct is alleged to violate these codifications and amendments and has failed to identify individual Defendants whom he claims are responsible for the conduct alleged.

### Standard of Review

Mr. Williams filed this amended complaint *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1), which permits an indigent litigant to commence an action in this court without prepaying the filing fee.  To guard against possible abuses of this privilege, the statute requires dismissal of any claim that is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).  A complaint that is legally frivolous may also be dismissed at its inception for lack of subject matter jurisdiction pursuant to Fed  R. Civ. P 12 (b)(1).  *See Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999); *O'Connor v. United States*, 159 F.R.D. 22 (D. Md. 1994); *see also Crowley Cutlery Co. v. United States*, 849 F.2d 273, 277 (7th Cir. 1988) (federal district judge has authority to dismiss a frivolous suit on his own initiative).

This court is mindful, however, of its obligation to construe liberally self-represented pleadings, such as the instant amended complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)*,* and in so doing assumes the factual allegations are true. *Id*. at 93, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Nonetheless, liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented").  In making this determination, "[t]he district court need not look beyond the complaint's allegations" but "must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally."  *White v. White,* 886 F. 2d 721, 722-723 (4th Cir. 1989).

With these standards in mind, the court finds that Mr. Williams has failed to articulate allegations which may be addressed suitably by this court or to which the named Defendants should be required to respond.[5]

## Analysis

### A.      Personal Participation

Mr. Williams' amended complaint, to the extent it asserts constitutional claims against federal agencies, is construed pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).   *Bivens* provides a judicially-created monetary remedy to vindicate violations of constitutional rights committed by federal actors in their individual capacity.  *See Hower v. Stewart*, GLR-17-198, 2018 WL 4384150, at *7 (D. Md. Sept. 14, 2018) (citing *Bivens*, 403 U.S. at 395-97 (1971))).  To state a *Bivens* claim, a plaintiff must allege that "a federal agent acting under color of his [federal] authority" violated his constitutional rights. *Bivens*, 403 U.S. at 389.  Thus, Plaintiff must sue the named Defendants in their individual, rather than their official, capacities.  *See Funches v. Wright*, 804 F.2d 677 (4th Cir. 1986) (citing *Butz v. Economou*, 438 U.S. 478 (1978)).   In a *Bivens* action, the plaintiff may seek money damages against a federal agent acting under the color of his or her authority for injuries caused by unconstitutional conduct but may not seek damages against the United States or a federal agency. *See FDIC v. Meyer*, 510 U.S. 471, 484 (1994) ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself."); *see also Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002)). Here, Mr. Williams has failed to identify any individual responsible for

---

[5]   Mr. Williams states that on August 9, 2018, while in custody, the van he was being transported in was involved in a motor vehicle accident which caused him injury.  ECF No. 1-1, p. 9, ¶ 22.  On the morning of August 28, 2018, while held at the Chesapeake Detention Facility, unnamed correctional officers assaulted him and conducted a strip search.  *Id.*, ¶ 23.  Should Mr. Williams wish to pursue these allegations against the officers responsible for these actions, he may file a separate federal lawsuit.

violating his rights.  Rather, he has named courts, offices, and agencies of the federal government as Defendants.  As such, his claim cannot proceed.

Moreover, liability for constitutional violations attaches only upon personal participation by a defendant in the wrongful conduct.  The doctrine of respondeat superior does not apply in civil rights claims.  *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit).  Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"  *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).  As noted, Mr. Williams has not named any individual defendants and to the extent he seeks to hold agencies and offices responsible for the conduct of their employees, his claim is unavailing.

### B. Limitation on *Bivens* actions

Actions filed under *Bivens* are more limited than those filed under 42 U.S.C. § 1983 which allows for a cause of action for plaintiffs whose constitutional rights were violated by state rather than federal officials.  *Annappareddy v. Pascale*, ___ F. 3d ___, 2021 WL 1603987, at *6 (4th Cir. April 26, 2021).  In *Bivens*, the court permitted an implied cause of action for plaintiffs whose Fourth Amendment rights were violated by federal officers.  Subsequently, "The Court allowed *Bivens*-type remedies twice more, in a Fifth Amendment gender-discrimination case….and in an Eighth Amendment Cruel and Unusual Punishments Clause case."  *Ziglar v. Abassi*, 137 S.Ct. 1843, 1848 (2019) (citations omitted).  The Supreme Court has refused to extend *Bivens* a number of times and expansion of the *Bivens* remedy is now disfavored.  *Ziglar*, 137 S.Ct. at 1857.  The

claims asserted by Mr. Williams in his amended complaint do not fit into any of the recognized causes of actions to which *Bivens* has been extended.

Were Mr. Williams to amend his complaint to name individuals who comprise the courts and agencies named as defendants, and/or to include recognized *Bivens* claims, his claims would nevertheless be subject to dismissal as many of the parties against whom Mr. Williams seeks to file suit, are protected from liability based on the claims asserted.

### C.   Judicial Immunity

Many of the people whom Mr. Williams seeks to hold responsible are protected from liability. *See Burns v. Reed*, 500 U.S. 478 (1991). This protection, known as the doctrine of judicial immunity, is designed to protect the judicial process. Accordingly, the inquiry conducted by this court centers on whether the Defendants' actions are closely associated with the judicial proceedings about which Mr. Williams complains. *Id.* Mr. Williams' entire amended complaint is suffused with his grievances regarding the handling of his civil ADA claim and the resulting criminal contempt proceedings.

The doctrine of judicial immunity extends, of course, to judges, *see Forrester v. White*, 484 U.S. 219, 226-27 (1988) ("If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits") and shields them from monetary claims against them in both their official and individual capacities. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) (per curiam). Judicial immunity is an absolute immunity; it does not merely protect a defendant from assessment of damages, but also protects a judge from damages suits entirely. *Id.* at 11. An act is still judicial, and immunity applies, even if the judge commits "'grave procedural errors.'" *Id.* (quoting *Stump v. Sparkman,* 435 U.S. 349, 359 (1978)).

Moreover, "judges . . .are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction" and "are alleged to have been done maliciously or corruptly." *Stump,* 435 U.S. at 355-56; *see Dean v. Shirer*, 547 F.2d 227, 231 (4th Cir. 1976) (stating that a judge may not be attacked for exercising judicial authority even if done improperly).

In *Pierson v. Ray*, 386 U.S. 547 (1967), the United States Supreme Court granted certiorari to consider whether a judge was liable for damages under 42 U.S.C. § 1983 for an unconstitutional conviction. In explaining its rationale for judicial immunity, the Court stated:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction ... This immunity applies even when the judge is accused of acting maliciously and corruptly, and it "is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences"... It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

*Id.* at 553-54.

The bar of absolute judicial immunity may be overcome in two limited sets of circumstances: (1) "for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; and (2) "for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12 (citing *Forrester at* 227-29). A judge acts in a judicial capacity when the function is one "normally performed by a judge" and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. The "relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" *Mireles*, 502 U.S. at 12-13 (citing *Stump*, 435 U.S. at 362).

Courts thus look to an "act's relation to a general function normally performed by a judge" to determine whether the act was judicial. *Id.* at 13. Neither exception applies here. Mr. Williams' claims against members of the Judicial Council for Fourth Circuit, U.S. District of Maryland, U.S.

Court of Appeals, and United States Supreme Court, stem from the facts that members of these organizations presided over aspects of his civil litigation, his judicial complaint, and his criminal proceedings. Rulings on pending cases over which they had jurisdiction are precisely the type of judicial action covered by judicial immunity. Mr. Williams provides no grounds to defeat the judicial immunity that applies to the Defendants' determinations made in his cases. Accordingly, Mr. Williams' amended complaint allegations against these Defendants are dismissed.

### D. Quasi-Judicial Immunity

Additionally, absolute quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir.1994). This doctrine of absolute quasi-judicial immunity has been further adopted and extended to court support personnel because of "'the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts.'" *Kincaid v. Vail,* 969 F.2d 594, 601 (7th Cir.1992) (quoting *Scruggs v. Moellering,* 870 F.2d 376, 377 (7th Cir.1989)).

In determining the applicability of quasi-judicial immunity, courts consider three main criteria: "(1) whether the official's functions are similar to those of a judge; (2) whether a strong need exists for the official to perform essential functions for the public good without fear of harassment and intimidation; and (3) whether adequate procedural safeguards exist to protect against constitutional deprivations." *Howard v. Food Lion Inc.*, 232 F.Supp.2d 585, 594 (M.D.N.C. 2002) (citing *Ostrzenski v. Seigel,* 177 F.3d 245, 249 (4th Cir. 1999)). Pursuant to *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987), "immunity is vitiated only when the judicial officer acts in the clear absence of jurisdiction." *Id.* (citing *Stump*, 435 U.S. 349). Mr. Williams

does not claim that employees of the courts named acted in the absence of jurisdiction. Thus, Mr. Williams' claim against these Defendants is not cognizable.

Likewise, prosecuting attorneys are quasi-judicial officers who enjoy absolute immunity when performing prosecutorial functions, as opposed to investigative or administrative ones. *See Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976); *see also Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993); *Nero v. Mosby*, 890 F.3d 106, 117 (4th Cir. 2018); *Springmen v. Williams*, 122 F.3d 211 (4th Cir. 1997). As with court employees, the inquiry focuses on whether a prosecutor's actions are closely associated with judicial process. *See Burns*, 500 U.S. at 479 (citing *Imbler*, 424 U.S. at 422-23). The court must use a "functional approach" to "determine whether a particular act is 'intimately associated with the judicial phase.'" *Nero*, 890 F.3d at 117-18 (quoting *Imbler*, 424 U.S. at 430). The Fourth Circuit stated in *Nero*, 890 F.3d at 118:

> A prosecutor acts as an advocate when she professionally evaluates evidence assembled by the police, *Buckley*, 509 U.S. at 273, decides to seek an arrest warrant, *Kalina*, 522 U.S. at 130, prepares and files charging documents, *id.*, participates in a probable cause hearing, *Burns*, 500 U.S. at 493, and presents evidence at trial, *Imbler*, 424 U.S. at 431.

The decisions as to whether, when, and how to prosecute pertain to the role of advocate. Therefore, on the face of the suit, any prosecutorial defendants such as "District of Maryland; Department of Injustice", enjoy absolute immunity. *See Lyles v. Sparks*, 79 F.3d 372, 376-77 (4th Cir. 1996).

By extension, United States Pretrial and Probation Office employees are also entitled to absolute quasi-judicial immunity for their role in investigating, preparing, and submitting reports. *See Hill v. Sciarrotta*, 130 F.3d 210, 213 (2d Cir. 1997); *Dorman v. Higgins*, 821 F.2d 133, 138 (2d Cir. 1987) (federal probation officers immune from suit); *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986) (federal probation officers immune from suit); *Boyce v. Maricopa*, 144 Fed. App'x 653, 654 (9th Cir. 2005) ("The district court properly concluded that the probation officer

defendants were entitled to absolute quasi-judicial immunity against damage claims."); *Ray v. Pickett*, 734 F.2d 370, 373-75 (8th Cir. 1984) (probation officers entitled to qualified immunity for their roles in petitioning for probation revocation).

### E.  Wrongful Arrest

United States Marshals and Baltimore County Police Department employees who played a role in Mr. Williams' arrest are not entitled to quasi-judicial absolute immunity.  Nonetheless, the amended complaint against them, if they were properly named, must be dismissed without prejudice.  Mr. Williams' claim that individuals acted improperly in their participation in his arrest presumes that the arrest was unlawful.  However, Mr. Williams' conviction has never been overturned or successfully challenged.  *See United States v. Williams*, Crim. Case TDC-18-413 (D. Md. 2018).  As such, the claim is barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U. S. 477, 486-87 (1994) (claims impugning the legality of criminal conviction not cognizable unless conviction is reversed).[6]  The holding in *Heck* has been further clarified to include any claim where facts "inconsistent with guilt" are pled.  *Covey v. Assessor of Ohio Cty.,* 777 F.3d 186, 197 (4th Cir. 2015).  Mr. Williams' allegations surrounding his arrest fall squarely within the *Heck* prohibition and may not proceed at this juncture.

### F.  Magistrate Judge Selection Panel

Mr. Williams does not explain how the Selection Panel was involved in the events.  Regardless of the role of the panel in the recommendation of individuals for appointment as magistrate judges, the Panel can in no way be responsible for the later decisions of those appointed to serve.

---

[6]  Likewise, any claims Mr. Williams is asserting against the prosecuting attorneys would be also barred under *Heck*.

**G.      State Action**

Lastly, Mr. Williams' claims against his court-appointed public defender may not proceed. Defense attorneys do not act under color of state law even if they are appointed by the court.  *See Deas v. Potts*, 547 F.2d 800, 800 (4th Cir. 1976); *see also Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980).  In addition, public defenders do not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding. *Polk Cty v. Dodson*, 454 U.S. 312, 453-54 (1981).

<strong>Conclusion</strong>

The All Writs Act "grants federal courts the authority [to impose pre-filing injunctions] to limit access to the courts by vexatious and repetitive litigants."  *Cromer v. Kraft Foods No. Am., Inc.,* 390 F.3d 812, 814 (4th Cir. 2004); *see* 28 U.S.C. § 1651(a).  Mr. Williams is hereby forewarned that repeatedly filing claims that this court has found lack merit or are otherwise barred, may result in an Order limiting his ability to continue filing such claims.

A separate Order follows.


April 30, 2021                                   _____/s/_____
                                                            DEBORAH K. CHASANOW
                                                            United States District Judge